**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 7:20-CV-165(WLS) |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN EQUIPMENT SALES & SERVICE, INC., & ZT MOTORS OF FORT WALTON FOUR, LLC, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

Presently pending before the Court are Auto-Owners Insurance Company ("Plaintiff") and Southern Equipment Sales' ("Defendant") Cross Motions for Summary Judgment. (Docs. 59 & 61.) For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 61) is **DENIED**, and Plaintiff's Motion for Summary Judgment (Doc. 59) is **GRANTED**.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiff, an insurance company, filed its Complaint against Southern Equipment Sales & Service, Inc. ("Southern Equipment") and ZT Motors of Fort Walton Four, LLC ("ZT Motors") on August 20, 2020. (Doc. 1.) Plaintiff seeks declaratory judgment that it has no duty to defend or indemnify Southern Equipment and that no coverage is afforded under the relevant insurance policy as to the underlying lawsuit between ZT Motors and Southern Equipment. (*Id.* ¶¶ 33-63.) Southern Equipment filed an Answer, which included counterclaims for expenses of litigation under O.C.G.A. § 13-6-11 and in tort for negligence, and bad faith and demanded a trial by jury. (Doc. 10.) ZT Motors did not answer the Complaint but moved to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 11.)

Auto-Owners subsequently filed an Amended Complaint and a Motion to Dismiss Southern Equipment's Counterclaim. (Docs. 20 & 21.) After briefing had concluded this Court

1

entered an Order denying ZT Motors Motion to Dismiss but granting Plaintiff's Motion to Dismiss Southern Equipment's Counterclaim. (Docs. 10, 11 & 28.) Thereafter, Auto-Owners and ZT Motors filed a Stipulation in which it was agreed that Defendant ZT Motors did not contest the coverage issues raised by Plaintiff in this declaratory judgment action, that Defendant ZT Motors took no position on whether the insurance policy provided insurance coverage for claims asserted in the underlying state court lawsuit, that Defendant ZT Motors submitted to the jurisdiction of the Court and consented to be bound by any and all judgments, that Defendant ZT Motors would have no responsibility for damages, costs or fee awards that might arise from this action and that the Parties would bear their own attorneys' fees and expenses. (Doc. 42.)

Thereafter the Parties filed their cross Motions for Summary Judgment on August 1, 2022. (Docs. 59 & 61.) In Defendant's Motion for Summary Judgment, Defendant moves for summary judgment on the issue of whether Plaintiff is estopped from indemnifying Defendant, Southern Equipment Sales, in the underlying lawsuit. (Doc. 61.) In Plaintiff's Motion for Summary Judgment, Plaintiff moves for judgment on two (2) issues: first whether there is coverage under the Policy issued by Auto-Owners to Southern Equipment for the claims asserted in the Underlying Lawsuit; second, whether Defendant, Southern Equipment's, failure to timely notice Plaintiff of certain correspondence relating to the underlying lawsuit constituted a breach of the notice of conditions precedent thereby affording no coverage under the policy. (Docs. 59 at 3.) Both Parties Responded and also Replied. (Docs. 64, 70, 73 & 74.) Accordingly, briefing has now concluded, and this matter is ripe for disposition.

## **RELEVANT FACTUAL BACKGROUND**

The following facts are derived from Plaintiff's Complaint (Doc. 1), Defendants' Answers to the Complaint (Docs. 10, 32 & 33), the Parties' Motions for Summary Judgment (Doc. 59 & 61), the Parties' Responses and Replies. (Docs. 62, 70, 73 & 74.) Where relevant, the factual summary also includes undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 587-88.

2

Auto-Owners is a corporation organized and existing under the laws of Michigan, with its principal place of business in Michigan. (Doc. 21 ¶ 1.) Southern Equipment is a corporation organized and existing under the laws of Georgia, with its principal place of business in Thomasville, Georgia. (*Id.* ¶ 2.) ZT Motors is a company organized and existing under the laws of Florida, with its principal place of business and citizenship in Florida. (*Id.* ¶ 3.) ZT Corporate owns the dealership at issue in this case and is based in Texas. (*Id.* ¶ 4.) Plaintiff seeks a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. (*Id.* ¶ 9.)

On or about May 4, 2016, Southern Equipment entered into two contracts with ZT Motors to install hydraulic lifts and other car servicing equipment. (Docs. 59-2 ¶ 4, 65 ¶ 4 & 60-3 at 81.) ZT Motors took issue with Southern Equipment's installation of the hydraulic lifts, alleging that Southern Equipment negligently and defectively installed the lifts, failed to protect the lifts after installation, failed and refused to take responsibility for the damaged lifts, and supplied lifts which were defective, or became damaged through exposure to weather. (Docs. 59-2 ¶ 5 & 65 ¶ 5.)

On or about May 1, 2018, ZT Motors, through its attorneys, sent a demand for repair and/or replacement – on law firm letterhead – via certified mail to Southern Equipment. (Docs. 60-5 at 21, 59-2 ¶ 7 & 65 ¶ 7.) In that letter, ZT Motors alleged that Southern Equipment had been negligent in its duty to properly protect the hydraulic lifts they installed, resulting in damage and a voiding of the lifts' warranty. (Doc. 60-5 at 21.) ZT Motors accordingly formally requested that Southern Equipment schedule an inspection of the lifts within ten (10) business days, in order for Southern Equipment to formulate an acceptable repair or replacement protocol. (*Id.*) The letter also requested that Southern Equipment provide the information regarding its insurance coverage pursuant to Florida Statute § 627.4137. (*Id.*)  Defendant Southern Equipment never provided a copy of the May 1, 2018, letter to Auto Owners, though it disputes whether it was required to do so.[1] (Docs. 59-2 ¶ 8, 65 ¶ 8 & 60-2 ¶ 8.)

---

[1] The Court notes for the purposes of the record that Southern Equipment's employees testified that they did not or could not recall whether they provided a copy of the May 1, 2018 letter to Auto-Owners. (Doc. 60-5 at 7 & 60-4 at 24.)

On May 11, 2018, Defendant Southern Equipment, responded to ZT Motors demand for repair and/or replacement, by writing to Frank Kilgore, ZT Motor's Attorney. (Doc. 60-4 at 82-83.) In that letter, it would appear that Southern Equipment attempted to disclaim liability, and also noted that they had been to site and offered a repair quote. (Doc. 60-4 at 82.) It is Auto-Owner's position that Defendant Southern Equipment did not copy Auto-Owners on this correspondence at that time. (Doc. 59-2 ¶ 10.) While Defendant denies that they did not provide a copy of the letter to Southern Equipment in its Response to Plaintiff's Statement of Material Facts (Docs. 59-2 & 65 ¶ 10), Defendant's denial is bellied by record in this case. It is bellied, because when Joseph C. Caldwell Jr.,[2] was asked whether he copied anybody on the letter, Joseph Caldwell admitted that he only sent it to Mr. Killgore. (Doc. 60-5 at 7-8.)

On June 26, 2018, Frank Kilgore, ZT Motor's Attorney, sent a letter in response to Southern Equipment's May 11, 2018, letter. (Doc. 60-4 at 89.) In that letter[3], Frank Kilgore reiterated ZT Motor's contention that Southern Equipment's negligent installation of the lifts had resulted in damage to the same. (*Id.*) Specifically, the letter claimed that Southern Equipment was aware of the possibility that the bottom of the lifts were likely to be filled with water, and failed to make arrangements to pump the water out resulting in damage. (*Id.*) Frank Kilgore also reiterated his request that Southern Equipment provide ZT Motors with Southern Equipment's insurance information for the relevant period. (*Id.*) The letter also stated that "[t]his is our final attempt to amicably resolve the issue by asking you to engage in a meaningful dialogue to repair the damages, at your cost." (*Id.*) Nobody at Southern Equipment could recall when they provided Auto-Owners with June 26, 2018, letter, (Doc. 60-4 at 27 & 60-5 at 9.) According to Shawn Raburn, a claims representative at Auto-Owners, Auto-Owners did not receive a copy of June 26, 2018, letter from Frank Kilgore until after this Declaratory Judgment

---

[2] Who the Court notes for the purposes of the record claimed to have written the letter back to Mr. Killgore (Doc. 60-5 at 7.)

[3] The Court notes for the purposes of the record that this letter may have in fact been an email.

action was filed on August 20, 2020.[4] (Doc. 60-2 at 4 ¶ 9.) Southern Equipment never substantively responded to Frank Kilgore's June 26, 2018, letter.

On December 3, 2018, Frank Kilgore sent another demand for repair and/or replacement letter to Southern Equipment. (Doc. 60-4 at 92.) In that letter, Frank Kilgore noted that Southern Equipment had neither provided insurance information as demanded nor responded to the June 26, 2018 correspondence. (*Id.*) The letter also notes that that the hazard posed by the negligently installed lifts had increased, due to the lifts further deteriorating, and that they now presented a safety and environmental hazard. (*Id.*) The letter also demanded that the lifts be removed and replaced immediately. (*Id.*) The letter concluded by once again requesting insurance information and also noting that if Southern Equipment failed to respond, ZT Motors would have no choice but to proceed with a lawsuit. (*Id.*) Nobody at Southern Equipment could recall whether they ever responded to this letter or forwarded it to Auto-Owners.[5] (Doc. 60-4 at 29; 59-2 ¶ 16.) According to Shawn Raburn, Auto-Owners would only receive the December 3, 2018, demand letter on January 14, 2020. (Doc. 60-2 at 4 ¶ 8.)

On or about August 30, 2019, ZT Motors filed a complaint in the Circuit Court of Okaloosa County, Florida against Southern Equipment, designated as civil action file No. 2019CA3233 (the "Underlying Lawsuit"). (Doc. 21 ¶ 15; Doc. 1-1.) After the suit was filed, Southern Equipment notified Auto Owners of the underlying lawsuit, and Florida defense counsel was retained.[6] (Doc. 71 ¶ 9.) It would appear that this took place on October 8, 2019. (Doc. 59-2 ¶ 23.)

On October 11, 2019, Auto-Owners emailed Southern Equipment and its Georgia Counsel to inform them that "there isn't any coverage on the policy." (Doc. 71 ¶ 11.) Auto-

---

[4] The Court notes for the purposes of the record that Southern Equipment denies that this raises a genuine issue of material fact, however, because the letter did not raise a requirement on the part of Southern Equipment to provide it to Auto Owners. (Doc. 65 ¶ 13.)

[5] The Court notes for the purposes of the record that Jeffrey Caldwell emailed Frank Kilgore on December 3, 2018 at 4:13pm, to notify him that he had received a copy of the email and would be meeting with Jody to discuss how to proceed. (Doc. 60-4 at 95.) It would appear that Southern Equipment never followed up.

[6] The Court notes for the purposes of the record that it was never factually established by the Parties in their briefs who retained the Florida defense counsel.

Owners followed up on October 14, 2019, by sending a certified letter denying the claim. (Docs. 60-4 at 166, 71 ¶ 12.) That same day, Auto Owners informed Florida defense counsel that it was pulling its defense of the underlying lawsuit. (Doc. 71 ¶ 13.)

On October 26, 2019 Counsel for Southern Equipment wrote a letter objecting to Auto Owners withdrawing its defense of Southern Equipment and denying of coverage. (Doc. 71 ¶ 14.) In response, on November 1, 2019, Auto-Owners sent a reservation of rights letter (Doc. 60-4 at 107) to Southern Equipment via certified mail, in which it agreed to investigate the claim further.[7] (Docs. 1-3 at 2 & 59-2 ¶ 24.)

While the record is not explicitly clear on what happened next, it appears that the Parties engaged in limited discovery, and on January 14, 2020, Auto-Owners for the first time received copies of Frank Kilgore's May 1, 2018, and December 3, 2018, letters.[8] (Docs. 59-2 ¶ 25 & 62-1 at 35.) Auto-Owners would not receive a copy of the June 26, 2018, letter from Frank Kilgore until August 23, 2021, when it was obtained through discovery.[9] (Doc. 59-2 ¶ 26.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "'A genuine issue of material fact does not

---

[7] The Court notes for the purposes of the record that the November 1, 2019 letter is titled "Revised Coverage Position Letter and Reservation of Rights." (Doc. 1-3 at 2.) In that letter, Auto Owners reserved its right to deny coverage in the future. (Doc. 1-3 at 12.)

[8] The Court notes for the purposes of the record that the letters were provided by one Mr. Fillmore, who was defense counsel that was hired for the insured. (Doc. 62-1 at 35.)

[9] The Court notes for the purposes of the record that Defendant Southern Equipment denied this factual claim. (Doc. 65 ¶ 26.) Defendant Southern Equipment appears to deny this factual assertion based on the deposition transcript of Jody Caldwell. (*Id.*) Defendant Southern Equipment did not pin cite this deposition testimony, however, and the Court notes for the purposes of the record that a keyword search of the docket in this matter, reflects that there is no deposition of Jody Caldwell. (See Docket.) District courts are not required to ferret out details from the record like truffle pigs to support a Party's argument and as Southern Equipment did not cite facts that would refute Plaintiff's supported factual assertions, there is no issue or question of material as to when Auto-Owners letter was obtained. *See Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009.)

exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. After the movant has met their burden, the Court must then determine "whether the evidence [submitted by the Party] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. While a Party can use their affidavit to meet this burden, Fed. R. Civ. P. 56(c)(4), the affidavit must "designate 'specific facts showing that there is a genuine issue for trial,'" and "he may not merely rest on his pleadings." *Graham*, 193 F.3d at, 1282. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. May 26, 2010) (citation omitted). To avoid summary judgment, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

As stated *supra,* it is Defendant's position that they're entitled to summary judgment, in this declaratory judgment action, because Plaintiff is estopped from not indemnifying Defendant, Southern Equipment Sales, in the underlying lawsuit. (Doc. 61.) It is Plaintiff's position that they're entitled to summary judgment, in this declaratory judgment action, because (1) the insurance policy does not cover the claims asserted in the underlying lawsuit and (2) Southern Equipment violated the notice of conditions precedent, thereby affording no coverage under the policy. (Doc. 59 at 3.) As it not necessary to do so, the Court declines to reach the issue of whether the insurance policy covers the claims asserted in the underlying lawsuit. For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 61) is **DENIED**, and Plaintiff's Motion for Summary Judgment (Doc. 59) is **GRANTED.**

I.   **Defendant is Not Entitled to Summary Judgment as Plaintiff is Not Estopped Disclaiming Coverage in the Underlying Lawsuit[10]**

Defendant, Southern Equipment, first contends that they're entitled to summary judgment as Plaintiff is estopped from obtaining the relief demanded in the Amended Complaint, i.e., declaratory judgment that it owes no duty to defend or indemnify Southern Equipment in the underlying lawsuit. (Doc. 61 at 2.) In support of this argument Southern Equipment cites *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6, 9 (2010.) (Doc. 61-2.) While less than clearly stated, it would appear that it is Southern Equipment's position that Auto-Owners is estopped from asserting the defense of noncoverage, because

---

[10] The Court notes for the purposes of the record that it views all evidence and factual inferences drawn therefrom in the light most favorable to the Plaintiff, on this issue, as the nonmoving party.

Auto-Owners assumed and conducted the initial defense without a reservation of right. (Doc. 61-2 at 6.)

According to the Supreme Court of Georgia, in cases where an "insurer assumes and conducts an initial defense without effectively notifying the insured that it is doing so with a reservation of rights, the insurer is deemed estopped from asserting the defense of noncoverage regardless of whether the insured can show prejudice." *World Harvest Church*, 695 S.E.2d at 12. While this rule would likely estop Auto-Owners from asserting a defense of noncoverage if it were applicable to the facts of this case, Southern Equipment did not factually establish that the rule promulgated in *World Harvest Church* applies.

As an initial matter, from the record presently before the Court, Southern Equipment has not established that Auto-Owners ever assumed and conducted the initial defense of Southern Equipment in the underlying lawsuit before filing a reservation of rights on November 1, 2019. There are only two (2) factual statements that go to this issue in the record presently before the Court. First, after the suit was filed, Southern Equipment notified Auto Owners of the underlying lawsuit, and Florida defense counsel was retained. (Doc. 71 ¶ 9.) As stated *supra*, however, at no point was it identified who retained Florida defense counsel. The second factual statement that goes to this issue is that on October 14, 2019, Auto-Owners denied the claim and informed Florida defense counsel that it was pulling its defense of the underlying lawsuit.[11] (Doc. 71 ¶ 13.) There is no claim or statement that Auto-Owners was paying Florida defense counsel, however.

While it is true that an inference could be drawn from these statements that Auto-Owners retained Florida defense counsel prior to forwarding its reservation of rights on November 1, 2019, at this stage of the proceedings this Court must view all evidence and factual inferences therefrom in the light most favorable to the Plaintiff, on this issue, as the nonmoving party. *See Matsushita*, 475 U.S. at 587-88. Accordingly, as Southern Equipment never presented evidence that showed that Auto-Owners assumed and conducted the initial

---

[11] While this statement implies that Auto-Owners had previously been defending Southern Equipment in the underlying lawsuit, Southern Equipment did not clearly factually establish that Auto-Owners had been defending Southern Equipment in its briefing. Failure to establish this factually is critical because Auto-Owners' did not reserve its rights prior to November 1, 2019.

defense in the underlying lawsuit, an inference is drawn in Auto-Owners' favor that Auto-Owners did not.

The second reason that Southern Equipment's estoppel argument fails is that "Georgia courts have held consistently that waiver and estoppel do not apply against coverage defenses" which is what Auto-Owners asserted in the present case.[12] *Sullivan v. Everett Cash Mut. Ins. Co.*, 2019 U.S. Dist. LEXIS 141628 (N.D. GA April 2019) (Doc. 60-4 at 106.) This is because when enforcing an insurance contract, Georgia law draws a distinction between "policy defenses" and "coverage defenses." *SavaSeniorCare, LLC v. Beazley Ins. Co.*, 309 F.R.D. 692, 698 (N.D. Ga. 2015.) A policy defense is one under which an insurer denies coverage based on the insured's failure to fulfill a procedural condition of the insurance policy. *See Sargent v. Allstate Ins. Co.*, 303 S.E.2d 43, 45 (1983). A "coverage defense," by contrast, is simply an assertion that the insurance policy does not cover the specific injury in question. *See Andrews v. Georgia Farm Bureau Mut. Ins. Co.*, 487 S.E.2d 3, 4, (1997).

Accordingly, summary judgment in Southern Equipment's favor, on these grounds currently is not appropriate. Summary judgment is not appropriate for two (2) reasons. First, genuine questions of material fact remain regarding if Auto-Owners assumed and conducted the initial defense of Southern Equipment in the underlying lawsuit before filing a reservation of rights on November 1, 2019. Second, as a matter of law, Auto-Owners is not estopped from asserting the defense of noncoverage, because Auto-Owners originally asserted a coverage defense.

Accordingly, Defendant, Southern Equipment's, Motion for Summary Judgment (Doc. 61), in this declaratory judgment action, on the basis that Plaintiff is estopped from asserting the defense of noncoverage is **DENIED**.

---

[12] Auto-Owners asserted a coverage defense because the communications that took place prior to November 1, 2019, denied Southern Equipment's claim on coverage grounds. Specifically, the October 11, 2019, email communication stated that "there isn't any coverage on the policy" (Doc. 60-4 at 106) and the October 14, 2019, letter, which was sent by certified mail, similarly denied on coverage grounds stating "we do not find any coverage available under this policy for the lifts. We will have to respectfully deny your claim." (Doc. 60-4 at 158.)

II.     **Plaintiff is Entitled to Summary Judgment because Defendant, Southern Equipment, Violated the Insurance Policy's Notice of Conditions Precedent[13]**

It is Plaintiff's position that they're entitled to summary judgment in this declaratory judgment action, because Southern Equipment violated the insurance policy's notice requirements. (Doc. 59-1 at 12.) In Georgia, the general rule is that "a notice provision in an insurance policy is only considered a condition precedent to coverage if it expressly states that a failure to provide such notice will result in a forfeiture of the insured's rights." *Plantation Pipe Line Co v. Stonewall Ins. Co.*, 780 S.E.2d 501, 511 (2015). Policy language that merely requires the insured to give notice of a particular event does not by itself create a condition precedent. *Id.* However, when policy language requiring the insured give notice is paired with a general provision that no action will lie against the insurer unless the insured has fully complied with the terms of the policy, that is sufficient to create a condition precedent. *Progressive Mt. Ins. Co. v. Bishop*, 790 S.E.2d 91, 94 (2016.) (citing *Lankford v. State Farm Mut. Auto. Ins. Co.*, 703 S.E.2d 436 (2010.)

In the present case, the insurance policy provides in relevant part as follows:

> **2. Duties in the Event of Occurrence, Offense, Claim or Suit**
>> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>>> (1) How, when and where the "occurrence" or offense took place;
>>> (2) the names and addresses of any injured persons and witnesses; and
>>> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense."
>
>> b. If any claim is made or "suit" is brought against any insured, you must
>>> (1) immediately record the specifics of any claim or "suit" and the date received; and
>>> (2) Notify us as soon as practicable

---

[13] The Court notes for the purposes of the record that it views all evidence and factual inferences drawn therefrom in the light most favorable to the Defendant, on this issue, as the nonmoving party.

> You must see to it that we receive written notice
> of any claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>> (1) Immediately send us copies of any
>> correspondence, demands, notices, summonses or
>> papers in connection with any claim or "suit";
>> (2) Authorize us to obtain records and other
>> information;
>> (3) Cooperate with us in the investigation or
>> settlement of any claim or defense of any "suit";
>> and
>> (4) Assist us, upon our request, in the enforcement
>> of any right against any person or organization
>> which may be liable to the insured because of
>> injury or damage to which this insurance may also
>> apply.
>
> d. No insured, will, except at the insured's own cost, voluntarily
> make a payment, assume any obligation, or incur any expense,
> other than for first aid, without our consent.
>
> 3. **Legal Action Against Us**: No person or organization has a right
> under Coverage Part:
>> a. To join us as a party or otherwise bring us into a "suit" asking
>> for damages from an insured; or
>> b. To sue us on this Coverage Part unless all of its terms have
>> been fully complied with.

(Doc. 1-2 at 110.)

Therefore, in the present case, the insurance policy had a notice provision – which did not expressly state that a failure to provide notice would result in a forfeiture of the insured's rights – that was paired with a generalized provision that no action will lie against the insurer unless the insured had fully complied with the terms of policy. (Doc. 1-2 at 110.) Accordingly, as Plaintiff correctly noted in its Motion for Summary Judgment (Doc. 59 at 14-15) notice to Auto-Owners of an occurrence, offense, claim or suit constitutes a condition precedent for coverage under the insurance policy.

In the present case, there is no genuine question of material fact that Southern Equipment failed to give notice to Auto-Owners of ZT Motors occurrences, offenses, claims, and suits against Southern Equipment in a timely fashion, and there is nothing in the record

that excuses or explains Southern Equipment's delay. The Court shall address each policy requirement in turn.

In the present case, there is no genuine question of material fact that Southern Equipment failed to give notice in a timely fashion to Auto-Owners of the "occurrence" or offense – alleged water to damage to the lifts – "which may result in a claim." (Doc. 1-2 at 110.) Southern Equipment was first put on notice of an occurrence or offense which may result in a claim on or about May 1, 2018, when ZT Motors sent a demand for repair and/or replacement – on law firm letterhead – via certified mail.[14] (Docs. 60-5 at 21, 59-2 ¶ 7 & 65 ¶ 7.) Southern Equipment's employees testified that they did not or could not recall whether they provided a copy of the May 1, 2018, letter to Auto-Owners. (Docs. 60-5 at 7 & 60-4 at 24.) While Southern Equipment responded to that letter on May 11, 2018 (Doc. 60-4 at 82), the record establishes that Auto-Owners did not receive the May 1, 2018, letter until January 14, 2020, a delay of six-hundred and six (606) days. (Doc. 60-2 at 4.) Accordingly, this Court finds that there is no genuine dispute of material fact that Defendant did not comply with the insurance policy's requirement that Auto-Owners be "notified as soon as practicable" of an occurrence or offense "which may result in a claim." (Doc. 1-2 at 110.)

Turning next to the June 26, 2018, letter by Frank Kilgore. (Doc. 60-4 at 89.) In the present case, there is no question of material fact that Southern Equipment failed to give notice in a timely fashion to Auto-Owners of the "claim" asserted in the June 26, 2018 letter. In that letter, ZT Motors requested that Southern Equipment make necessary repairs, and noted that this would be ZT Motor's "final attempt to amicably resolve the issue by asking you to engage in a meaningful dialogue to repair the damages, at your cost." (Doc. 60-4 at 89.) Despite the June 26, 2018, letter clearly representing a claim or demand for repair, Auto-Owners would not receive a copy of the June 26, 2018, letter until after the present declaratory judgment action was filed, a delay of at least seven-hundred and eighty-six (786) days. (Doc. 60-2 ¶ 9.)

---

[14] The Court notes for the purposes of the record that on careful review of the May 1, 2018, letter that ZT Motors did not assert a claim in that letter, but rather "formally reqest[ed] that Southern Equipment Company Sales & Service, Inc. schedule an inspection of the Lifts at the ZT Dealerships." (Doc. 60-5 at 21.) This was sufficient to put Southern Equipment on notice that there had been an occurrence "which may result in a claim."

Turning next to the December 3, 2018, letter by Frank Kilgore. (Doc. 60-4 at 92.) In the present case, there is no genuine question of material fact that Southern Equipment failed to give notice in a timely fashion to Auto-Owners of the "claim" asserted in the December 3, 2018 letter. In that letter ZT Motors demanded that the lifts be removed and replaced immediately, and noted that if they did not hear back they would have "no choice but to proceed to suit in order to protect [ZT Motor's] interests." (Doc. 60-4 at 92-93.) Despite the December 3, 2018 letter clearly representing a claim or demand for repair, Auto-Owners would not receive a copy of the December 3, 2018, letter until January 14, 2020, a delay of four-hundred and seven (407) days. (Doc. 60-2 at 8.)

Turning next to underlying lawsuit. In the present case, there is no genuine question of material fact that Southern Equipment failed to "[i]mmediately send [Auto-Owners] copies of any correspondence, demands, notices, summonses or papers in connection with any claim or 'suit.'" (Doc. 1-2 at 110.) In the present case, the underlying lawsuit was filed on or about August 30, 2019. (Doc. 21 ¶ 15; Doc. 1-1.) Service of process was accepted by Southern Equipment on September 13, 2019. (Doc. 60-4 at 133.) Southern Equipment would delay twenty-five (25) days, before filing a notice of occurrence/claim on October 8, 2019.[15] (Doc. 60-4 at 121.)

In addition, despite the insurance policy's clear requirement that Southern Equipment immediately send Auto-Owners "copies of any correspondence, demands, notices, summonses or papers in connection with any claim or 'suit'" there is no genuine question of material fact that Southern Equipment also neglected to immediately provide Auto-Owners with its previous correspondences with ZT Motors, as required. For example, Auto-Owners would not receive a copy of the May 1, 2018, letter or December 3, 2018, letter until January 14, 2020. (Doc. 60-2 at 4.) Backdating from the date that service of process was accepted, September 13, 2019,[16] there was a delay of one-hundred and twenty-three (123) days. Auto-

---

[15] The Court notes for the purposes of the record that Southern Equipment did not directly notify Auto-Owners of the underlying suit. Rather, Auto-Owners first received notice of ZT Motors' claims against Southern Equipment from an employee of J. Smith Lanier & Co., a local insurance agency that was utilized by Southern Equipment, (Doc. 60-4 at 34) on October 8, 2019. (Doc. 60-2 at 3.)

[16] The Court backdated from September 13, 2019, because acceptance of service of process would clearly have placed Southern Equipment on notice that a "suit" had been filed against them.

Owners would also not receive a copy of the June 26, 2018, demand letter (Doc. 60-4 at 89) until after the present declaratory judgment action was filed (Doc. 60-2 at 4), a delay of at least three-hundred and forty-two (342) days.[17] Finally, the Court notes for the purposes of the record that Auto-Owners did not receive copies of the May 1, 2018, June 26, 2018 and December 3, 2018 correspondences from Southern Equipment. (Doc. 60-2 at 4 ¶ 10.)

Accordingly, based on the facts as outlined *supra*, this Court finds that there is no genuine question of material fact that Southern Equipment failed to comply with the conditions precedent of their insurance policy. There is no genuine question of material fact that Southern Equipment failed to comply with the conditions precedent of their insurance policy, because Southern Equipment failed to give notice in a timely fashion to Auto-Owners of any occurrence, offense, claim or suit. For example, Southern Equipment failed to notify Auto-Owners of the May 1, 2018 letter which represented an occurrence which may result in a claim. Southern Equipment also failed to timely notify Auto-Owners of the claims asserted in the June 26, 2018 and December 3, 2018 demand letters. Finally, the Court notes for the purposes of the record that there is no genuine question of material fact that Southern Equipment failed to immediately send copies of any correspondence to Auto-Owners, including ZT Motor's demand letters, after ZT Motors filed the underlying suit on August 30, 2019.

Accordingly, as there is no genuine question of material fact that Southern Equipment violated the conditions precedent of the insurance policy, Auto-Owners' Motion for Summary Judgment (Doc. 59) is **GRANTED**.

## **CONCLUSION**

In conclusion, Southern Equipment's Motion for Summary Judgment (Doc. 61) is **DENIED** as Auto-Owners is not estopped from indemnifying Southern Equipment in the underlying lawsuit. Furthermore, Auto-Owners' Motion for Summary Judgment (Doc. 59) is **GRANTED in part** and **DENIED in part as MOOT without prejudice**. Auto-Owners' Motion for Summary Judgment is **GRANTED** as to the issue of whether Southern Equipment violated the notice of conditions precedent thereby affording no coverage under

---

[17] The Court backdated from September 13, 2019, for the same reasons stated *supra*.

the policy. As it is not necessary to do so the Court declines to reach the issue of whether the insurance policy covers the claims asserted in the underlying lawsuit. Accordingly, Plaintiff's Motion for Summary Judgment as to that issue is **DENIED as MOOT without prejudice**.

    **SO ORDERED**, this 31st day of March, 2023.

        **/s/ W. Louis Sands**
        **W. LOUIS SANDS, SR. JUDGE**
        **UNITED STATES DISTRICT COURT**